UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAEWEATHERS MARSHALL, Plaintiff, v. ALAMEDA COUNTY, et al., Defendants. | Case No. 17-cv-03195-SI **ORDER OF DISMISSAL WITH LEAVE TO AMEND** Re: Dkt. No. 1 |

Maeweathers Marshall, an inmate at the Correctional Training Facility in Soledad California, filed a *pro se* civil rights complaint seeking relief under 42 U.S.C. § 1983. The complaint is now before the court for review under 28 U.S.C. § 1915A.

**BACKGROUND**

Marshall filed three civil rights actions based on events and omissions that occurred mostly in or about July 2016: *Marshall v. Alameda County*, No. 17-cv-3195 SI; *Marshall v. Alameda County*, No. 17-3310 SI; and *Marshall v. Hammed*, No. 17-cv-3736 SI. The cases earlier were assigned to a magistrate judge but recently were reassigned to the undersigned following the Ninth Circuit's decision in *Williams v. King*, 875 F.3d 500 (9th Cir. 2017) (magistrate judge lacked jurisdiction to dismiss case on initial screening because unserved defendants had not consented to proceed before magistrate judge).

The complaint appears to allege the following:

Marshall was booked into Santa Rita Jail from a psychiatric hospital on April 23, 2016 and told the booking nurse that he had seizures, took gabapentin, and had a lower tier/lower bunk chrono. He had obtained the chrono on his last visit to the county jail. Docket No. 1 at 4.

On July 10, 2016, Marshall fell down the stairs in his housing unit while trying to catch trays that were falling from his grasp. At the time, he was carrying multiple meal trays, a spray bottle and cleaning scrubber. (His allegations suggest the fall was due to carrying too many things rather than due to a seizure.) He was hurt and was taken to Highland Hospital for treatment. There, a CT-scan was done and he received gabapentin for pain; later, he was discharged from the hospital with an aluminum cane. Transportation deputy Christensen took the aluminum cane away, and said a wooden cane would be issued when Marshall returned to jail.

When Marshall returned from the hospital, he went to the jail's observation unit. There he told a nurse he needed a cane and stronger pain medication. He was offered over-the-counter medication. He already was taking gabapentin that was not doing anything for his pain.

On July 10, 2016, Marshall had a seizure while attempting to use the restroom. He urinated on himself. A nurse did nothing to assist him back to bed or to give him a change of clothes. *Id.* at 6. Eventually, he got back to bed. Later, out of fear of having another seizure and having difficulty mobilizing, Marshall did not get out of bed to use a toilet and instead defecated on himself. *Id.*

On July 11, 2016, he saw a doctor from Corizon Health Services, the company that provided medical care at the jail. The doctor said he needed to see the images from the CT-scan done at the hospital before deciding whether to order a cane and stronger pain medications.

On July 12, 2016, deputy Rodriguez moved Marshall out of one observation area into another unit, without Marshall having a chance to see Dr. Jane Doe. Deputy Rodriguez told Marshall that the doctor said she would see Marshall in the housing unit. *Id.* at 6-7. Deputy Rodriguez put waist chains on Marshall, helped him into a wheelchair and said that Marshall would be on a lower tier. Deputy Rodriguez took Marshall back to the disciplinary pod, dumped him out of the wheelchair, and then dragged him by waist chains back to the back of his cell, aggravating Marshall's injuries and pain. *Id.* at 7-8. (Confusingly, Marshall states this occurred on April 23, 2016. *Id.* at 7.)

On July 21, 2016, Dr. Nienow saw Marshall and said that he would order additional Ultram (a pain medication) and a cane. *Id.* at 8. Marshall went many days without pain

medications and a cane, although his confusing allegations are unclear as to whether it was 11 days, 31 days or 31+11 days. *See id.* at 9.

On August 11, 2016, Dr. Nienow saw Marshall and said he would give Marshall an anti-inflammatory, which Marshall though was "redundant because [he] did not have swelling." *Id.* at 9. Marshall asked for an egg crate mattress and double mattress for his pain, and Dr. Nienow said he would have to look at his notes. On August 14, 2016, Marshall received his double mattress chrono and an egg crate mattress. *Id* at 9-10.

On August 12, 2016, a cane was issued for Marshall pursuant to a court order.

There may be additional claims against medical staff, but the court cannot read many words in the complaint due to Marshall's poor handwriting.

**DISCUSSION**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

A. <u>Medical Care Claims - In General</u>

A plaintiff's inmate status -- i.e., pretrial detainee versus convicted prisoner -- at the time of the events and omissions giving rise to the complaint is important, especially for medical and safety claims. His status affects the analysis of his claims because a convicted prisoner's medical

3

care claim arises under the Eighth Amendment to the U.S. Constitution, whereas a pretrial detainee's medical care claim arises under the Fourteenth Amendment to the U.S. Constitution. Until recently, the standards were considered roughly the same under the Eighth and Fourteenth Amendments, *see generally Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996), but more recently, the two standards have diverged with respect to the mental state requirement for a defendant. Due to the differences in the Eighth and Fourteenth Amendment claims, an inmate-plaintiff's status at the time of the relevant events must be known because some conduct that violates the Fourteenth Amendment will not violate the Eighth Amendment. If a plaintiff has transitioned from being a pretrial detainee to a convict (or vice-versa), both standards may need to be applied -- with one standard being applied to the events that occurred when the person was a pretrial detainee and a different standard being applied to the events that occurred after he was convicted.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). A defendant violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In the medical care context, the prisoner first must identify an objectively serious medical need. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (serious medical need exists if "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.") Second, the prisoner must allege that the defendant acted with the requisite mental state of deliberate indifference to a risk to the prisoner's health. Under the Eighth Amendment standard applicable to prisoner claims, a defendant is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. The defendant must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.*

When a pretrial detainee challenges conditions of his confinement, the proper inquiry is

4

whether the conditions amount to punishment in violation of the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). An inmate claiming that jail officials have responded inadequately to his medical needs while he was a pretrial detainee must establish two elements to state a claim under § 1983. First, he must identify an objectively serious medical need. *See Wilhelm*, 680 F.3d at 1122. Second, he must allege that a defendant acted with the requisite mental state of deliberate indifference to the risk to the inmate's health. It appears that a pretrial detainee must allege facts to show that a defendant "did not take reasonable measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree or risk involved--making the consequences of the defendant's conduct obvious." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016 (en banc), *cert. denied* 137 S. Ct. 831 (2017).[1]

A claim of medical malpractice or mere negligence is insufficient to make out a violation of the Eighth Amendment or the Fourteenth Amendment. *See Toguchi,* 391 F.3d at 1060-61; *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002); *Castro*, 833 F.3d at 1071.

---

[1] For present purposes, the court assumes that an objective (rather than subjective) standard of deliberate indifference applies to medical care claims from pretrial detainees. The court recognizes the law currently is unsettled as to whether an objective or subjective standard of deliberate indifference applies. *Castro* announced the objective standard in a deliberate-indifference-to-safety claim from a pretrial detainee, and the Ninth Circuit has not yet decided whether the same objective standard of deliberate indifference applies to a medical care claim from a pretrial detainee. The issue remains undecided in the Ninth Circuit. *See Banks v. Castillo*, 2017 WL 784643, *1 (9th Cir. Mar. 1, 2017) (unpublished decision) (summary judgment was proper on a pretrial detainee's claim of deliberate indifference to medical needs "under any potentially applicable standard," citing *Castro* as well as earlier cases using subjective standard for deliberate indifference claims). Other circuits have taken different approaches. *See Ryan v. Armstrong*, 850 F.3d 419, 425 n.3 (8th Cir. Mar. 7, 2017) (citing *Castro* and declining to decide whether deliberate indifference test is now an objective test for medical care claims by pretrial detainees); *Darnell v. Pineiro*, 849 F.3d 17, 35 n.14 (2d Cir. Feb. 21, 2017). (citing *Castro* and holding that objective test for deliberate indifference applies to pretrial detainees' claims about conditions of confinement, such as overcrowding, sanitation problems, and inadequate nutrition)); *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415 (5th Cir. 2017) (following Fifth Circuit precedent and declining to adopt objective standard for pretrial detainee's claim of deliberate indifference to medical needs). If defendants are ever served with process, they are free to revisit the issue of whether a subjective or objective standard of deliberate indifference should apply to a medical care claim from a pretrial detainee, but the court will assume in the interim that it is an objective standard.

B.  Marshall's Complaint

The complaint has several deficiencies, making it necessary for Marshall to file an amended complaint.

First, Marshall does not allege whether he was a pretrial detainee or a convicted prisoner at the time of the relevant events. In his amended complaint, Marshall must allege whether he was a pretrial detainee or a convict. If he had one custodial status at one time and another custodial status at another time, he should describe the dates during which he was a prisoner and during which he was a pretrial detainee.

Second, Marshall must link defendants to his claims by alleging facts showing the basis for liability for each individual defendant. He should not refer to them as a group (e.g., "the defendants"); rather, he should identify each involved defendant by name and link each of them to his claim by explaining what each defendant did or failed to do that caused a violation of his constitutional rights. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (liability may be imposed on individual defendant under § 1983 only if plaintiff can show that defendant proximately caused deprivation of federally protected right). A supervisor may be liable under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

If Marshall does not know the true name of the alleged wrongdoers, he may use Doe defendant designations, so that each person is separately identified as a Doe defendant, e.g., John Doe # 1, John Doe # 2, Jane Doe # 1, etc. Although the use of Doe defendants is acceptable to withstand dismissal of the complaint at the initial review stage, using Doe defendants creates its own problem: those persons cannot be served with process until they are identified by their real names. The court will not stall this action while Marshall tries to learn the name of the Jane Doe and John Doe defendants. Rather, Marshall must promptly take steps to discover the name of the unnamed defendants and provide that information to the court in an amendment to his pleading. The burden remains on the plaintiff; the court will not undertake to investigate the names and identities of unnamed defendants. Marshall must provide the true names and identities of the Jane

1  Doe and John Doe defendants within 120 days of the date of this order or they may be dismissed
2  without prejudice to him filing another action against them.  Marshall's use of a Jane Doe
3  defendant has the additional problem that he appears to be referring to several people as a single
4  Jane Doe defendant.  If there are multiple unknown persons, each unknown defendant must be
5  identified as a separate Jane Doe, e.g., Jane Doe # 1, Jane Doe # 2, etc., so that eventually each
6  Jane Doe defendant can be replaced by a separate person when her true name becomes known.

Third, Marshall has named Alameda County and the Corizon Medical Department as defendants, but the complaint does not state a claim against either.  There is no respondeat superior liability under § 1983, i.e., no liability under the theory that one is liable simply because he employs a person who has violated a plaintiff's rights.  *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978)*; Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  The mere fact that the alleged individual wrongdoer was employed by an institutional defendant would not be a sufficient basis on which to hold the employing institutional defendant liable.  Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort, *see Monell,* 436 U.S. at 690.  To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation.  *See Plumeau v. School Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).  For municipal liability, a plaintiff must plead sufficient facts regarding the specific nature of the alleged policy, custom or practice to allow the defendant to effectively defend itself, and these facts must plausibly suggest that the plaintiff is entitled to relief.  *See AE v. County of Tulare*, 666 F.3d 631, 636-37 (9th Cir. 2012).  It is not sufficient to merely allege that a policy, custom or practice existed or that individual officers' wrongdoing conduct conformed to a policy, custom or practice.  *See id.* at 636-68.

Fourth, the mental state of deliberate indifference is not adequately pled.  It is not a constitutional violation for an inmate to have medical problems, such as seizures and pain.  The constitutional violation occurs when there is both a medical problem and an inadequate response

7

by jail officials to that problem. The complaint is deficient in that it does not allege deliberate indifference by any particular person to a medical problem. Marshall alleges that one or more doctors wanted to see the CT scan results before providing him with a cane or medications, but does not show how this reflected deliberate indifference rather than sound medical judgment by those doctors.

Fifth, Marshall appears to complain about the processing of some of his inmate appeals. There is no federal constitutional right to a prison or jail administrative appeal or grievance system for California inmates. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). Prison and jail officials are not liable for a due process violation for simply failing to process an appeal properly, denying an inmate appeal or granting an inmate appeal. A claim under § 1983 for a due process violation is not stated against any defendant for the handling of Marshall's inmate appeals.

Sixth, as noted earlier, Marshall filed three actions about events and omissions happening at roughly the same time. Generally speaking, it appears that this action (17-cv-3195 SI) has the claims against the medical care providers, another action (17-cv-3310 SI) has the claims against the guards and custody personnel, and a third action (17-cv-3736 SI) has claims about a missed lunch. It is permissible for Marshall to pursue his claims in three separate actions, but it is not permissible to assert the same claim(s) in more than one action. Many of the allegations in this action appear to be the same as allegations in other actions. For example, Marshall names deputies Linn and McDermott as defendants in this action and in Case No. 17-cv-3310 SI and both actions have some overlapping allegations against those defendants. As another example, the present case appears to be about medical care, but there are many allegations in Case No. 17-cv-3310 alleging some of the same medical care problems. Marshall must be careful to keep his actions separate and not repeat claims in different actions. Marshall needs to figure out a coherent division of his claims if he wants to pursue them in separate actions. (Dividing the claims so that this action has the medical care claims, and Case No. 17-cv-3310 SI has the claims against guard and custodial staff would be a coherent division of claims. If he uses that division, it makes more sense for the claim against deputy Rodriguez to be in Case No. 17-cv-3310 SI.) This is especially important because the court will not permit him to file a single document for inclusion in two or

1 three cases in future filings.

2 Seventh, Marshall's handwriting is very difficult to read. He repeatedly used similar pen marks that the court had to puzzle over to try to discern the particular letter (e.g., the same mark might be an s, v, r, or n) that was supposed to be represented by the pen mark to determine what the word was so that the sentence could be understood. The court accepts handwritten as well as typed documents from *pro se* litigants, but requires that all documents must be legible. In future filings, Marshall must write much more neatly or type his documents or have another inmate write them for him. The court will reject documents that it cannot read.

## CONCLUSION

The complaint is dismissed with leave to amend. Plaintiff must file an amended complaint that complies with the directions in this order no later than **February 23, 2018**, and must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page. Plaintiff is cautioned that his amended complaint must be a complete statement of his claims. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.") Failure to file the amended complaint will result in the dismissal of this action.

**IT IS SO ORDERED**.

Dated: January 19, 2018

_____
SUSAN ILLSTON
United States District Judge